Metropolitan Trust Co. of the City of New York, as Substituted Trustee under the Last Will and Testament of Sarah Ann March, Deceased, Plaintiff, *v.* Louisa March Allen, Flora March Turner, Marguerite St. Ament, George Stanley St. Ament, Fanning C. T. Beck, Individually and as Executor of and Trustee under the Last Will and Testament of Louisa March, Deceased, et al., Defendants.

(Supreme Court, New York Special Term, April, 1918.)

Wills — directions contained in — action for construction of — trusts — executors and administrators — Surrogate's Court — codicil — life tenants — distribution.

> Testatrix devised and bequeathed all of her estate to her executors in trust for the sole and separate use of her two daughters during their respective lives, with direction that one equal half part of said property be set apart to each daughter in severalty and upon further trusts declared. A codicil to the

will, which changed its provisions as to the transfer of the estate in remainder, provided that upon the decease of either or both of the daughters her or their share or shares in the estate should go to the sons of the testatrix, share and share alike, " if all be then living, but if either of my sons be dead at the time of the death of either or both of my said daughters, then I give the share to which the son or sons so dying would have been entitled to if living, to the survivor or survivors of my said sons; and if all my sons should die before the death of either or both of my said daughters, then the share or shares to which my sons would have been entitled to if living shall, upon the decease of either or both of my said daughters, become vested in my heirs at law and next of kin in the same manner as if I had died intestate." The testatrix left her surviving three sons, two daughters and the children of a son who predeceased her. The surviving sons, none of whom left issue, were survived by their sisters both of whom died testate, one unmarried, the other a widow and without issue. After the death of the unmarried daughter the share set apart for her benefit, pursuant to a decree of the Surrogate's Court, was distributed among the heirs at law and next of kin of testatrix herein, living at the time of the death of the life tenant, whose estate received no portion of said distributive share. In an action for the construction of said provisions of the codicil, *held,* that the will must be construed by the rules applicable to bequests and not by those applicable to devises.

The estates of the two daughters were not entitled to share in the division of the estate set apart for them by the will of the testatrix herein.

Since the only heirs and next of kin who survived the life tenants were the grandchildren of the son of testatrix who had predeceased her, they alone are entitled to share equally the trust estate in remainder.

ACTION for the construction of a will.

Parsons, Closson & McIlvaine, for plaintiff.

Roosevelt & Kobbe, for defendants.

Reeves & Todd (Alfred G. Reeves and Alexander S. Rowland, of counsel), for defendant Beck.

Douglas, Armitage & McCann (Paul Armitage of counsel), for defendant Krans.

Wells & Snedeker (H. H. Snedeker of counsel), for defendants St. Ament.

GREENBAUM, J. This action was brought for the construction of the " fourth " clause of the second codicil of the will of Sarah Ann March. The will of Sarah Ann March bears date May 16, 1850; the first codicil, February 4, 1856, and the second codicil, June 9, 1859. The testatrix died November 25, 1860, leaving her surviving three sons, two daughters and the children of a son who predeceased her. The three sons died before the death of each of their sisters and left no issue. The daughters of the testatrix were Louisa March, who died October 11, 1887, unmarried, and Lucy D. Sheafe, who died on May 25, 1916, a widow, leaving no issue. Louisa left a last will and testament, in which the defendant Beck was named as executor, and Lucy D. Sheafe left a will in which the defendant Krans was named as executor. The remaining defendants are Florence March Turner, Louisa March Allen, George Stanley St. Ament and Marguerite St. Ament, all of whom are the grandchildren of Thomas Henry March, the son of the testatrix who had predeceased her. The " fourth " clause in question reads as follows: " Upon the decease of either or both of my said daughters, I give and devise and bequeath her or their share or shares in my estate to my sons Clement Dudley, Francis William and Edward Dudley, to be equally divided between them, share and share alike, if all be then living, but if either of my sons be dead at the time of the death of either or both of my said daughters, then I give the share to which the son or sons so dying would have been entitled to if living, to

Supreme Court, April, 1918.    [Vol. 103.

the survivor or survivors of my said sons; and if all my sons should die before the death of either or both of my said daughters, then the share or shares to which my sons would have been entitled to if living shall, upon the decease of either or both of my said daughters, become vested in my heirs at law and next of kin in the same manner as if I had died intestate.'' By her will the testatrix gave all her property, real and personal, to her executors in trust '' for the sole and separate use of my two daughters Louisa and Lucy Dudley during their respective lives, one equal half part of the property hereby given and bequeathed to be set apart and divided by the said trustees to each of my said daughters in severalty and upon the further trusts hereinafter declared.'' The '' first '' clause of the will '' empowers and directs '' the executors to sell the real estate of which the testatrix may be seized or possessed at the time of her death and devises all the real estate to the executors and the survivor of them and the heirs and assigns of such survivor, '' in trust to receive the rents and profits thereof until the said real estate shall be sold as hereinbefore directed, and to apply the said rents and profits to the use of my two daughters Louisa and Lucy during their joint lives in equal portions and to the use of the survivor of them.'' By the '' third '' clause of the will, she directs her trustees to invest and reinvest the personalty and the proceeds of the real estate and to pay over to her daughters '' respectively '' the income and rents derived therefrom. By the '' fourth '' and '' fifth '' clauses of the original will the testatrix directed that upon the death of her daughters the respective remainders were to be transferred to their issue, and in default of issue the income thereof was to be paid to the surviving daughter, and upon her death the remainder was to be transferred to the heirs

of her body, in default of such heirs to her sons then living and the issue of any deceased son. By the " fourth " clause of the codicil she changed the provisions as to the transfer of the remainder and gives the respective shares to her sons who should survive her daughters, and in the event that no son survived the daughters the remainder was to " become vested in my heirs at law and next of kin in the same manner as if I had died intestate." Subsequently to the death of the life tenant Louisa March, the share set apart for her benefit during her life was distributed pursuant to a decree of the surrogate of this county to the heirs at law and next of kin who were alive at the death of the life tenant. As a consequence of this decree the estate of Louisa March acquired no portion of the distributed share. It is now claimed in behalf of the defendants Turner, Allen and St. Ament that the estates of Louisa March and of Lucy D. Sheafe are not ·entitled to share in the division of the estate set apart for Lucy D. Sheafe not only because of the binding effect upon them of the surrogate's decree, which resulted from the construction by the surrogate of the " fourth " codicil, but also because such construction was the correct one. The contentions of the defendants . Beck and Krans as executors are that the remainders of the residuary property vested originally in the three designated sons of the testatrix, but were divested by the death of all of them while the two daughters were still living; that on the death of the last survivor of said three sons those remainders became absolutely and indefeasibly vested in the persons who at that time were the heirs at law and next of kin of said testatrix, and that one-third of the residuary estates vested accordingly in Louisa March and passed by her will to her trustee, Fanning C. T. Beck, and one-third in Lucy D. Sheafe and passed by her will to her

20

trustee, Krans. It is well settled that the intention of a testator unmistakably expressed in his will must control in its interpretation, regardless of well recognized canons or rules of construction that otherwise might apply. *Cammann* v. *Bailey,* 210 N. Y. 19, 30; *Herzog* v. *Title Guarantee & Trust Co.,* 177 N. Y. 86, 92. And where such intention can only be effectuated by a sale of the realty of which the testator died seized, "the realty will be deemed to have been converted into personalty." *Fraser* v. *Trustees, etc., U. P. Church,* 124 N. Y. 479, 485. It is also well settled that upon the termination of a particular estate the objects of the bounty of a testator embrace not only persons *in esse* at his death, but those who thereafter may come into being before the time fixed for distribution, who will take as a class, embracing individuals who cannot be ascertained until the happening of the event. *Kilpatrick* v. *Johnson,* 15 N. Y. 322, 325. And "Where final division and distribution is to be made among a class the benefits of the will must be confined to those persons who come within the appropriate category at the date when the distribution or division is directed to be made." *Matter of Baer,* 147 N. Y. 348, 353, citing *Bisson* v. *West Shore R. R. Co.,* 143 id. 125; *Goebel* v. *Wolf,* 113 id. 405, 413; *Teed* v. *Morton,* 60 id. 506; *Matter of Smith,* 131 id. 239, 247; *Salter* v. *Drowne,* 205 id. 204; *Matter of Leonard,* 218 id. 513, 521; *Gilliam* v. *Guaranty Trust Co.,* 186 id. 127, 133. In *Dickerson* v. *Sheehy,* 156 App. Div. 101, 105; affd., 209 N. Y. 592, the opinion reads: "In *Schlereth* v. *Schlereth* (173 N. Y. 444) the will gave all the property to the executors in trust to pay the income to testator's only daughter during her life, and after her death, leaving issue, to pay over the income to such issue in equal shares until the youngest should attain the age of twenty-one years, and then to divide and distribute

the whole trust fund among such issue in equal shares. It was held that the estate did not vest until the time arrived for distribution.'' The same principle in effect was recognized in *Smith* v. *Edwards,* 88 N. Y. 104. The provisions of the will, with its imperative power of sale, effected an equitable conversion of the real property into personalty. *Salisbury* v. *Slade,* 160 N. Y. 279, 288. The will under construction not only directs the division of the trust estate into two equal parts, each to be held separately for the benefit of the daughters of the testatrix, but also directs the trustees to sell the real property of which she died seized, to invest the proceeds and pay the income to her daughters. The only limitation as to sale is expressed in one of the codicils that the trustees were not to sell the dwelling house on Pierrepont street, in which the testatrix resided, during the lives of her daughters without the written consent of her daughters or the survivor of them. It seems to me clear that the intention of the testatrix could not be effectuated without the equitable conversion of the real property into personalty. *Salisbury* v. *Slade, supra.* In the will in that case there was a restriction imposed upon the trustees not to sell or divide up the real estate devoted to the use of the widow of the deceased during her life or widowhood, and the power of sale in that case was not imperatively expressed as is the one under review, and the court there held that notwithstanding the restriction mentioned the provisions of the will effected an equitable conversion of the realty. It follows from what has been said that the will must be construed by the rules applicable to wills of personal property, and not by those applicable to devises of real property. The codicil contemplated that each daughter was to have a life estate only in the equal share set apart for her, and that the *corpus* of each share was to be

divided among the class answering the description at the time when final division was to be made. The general rule that property when divided shall go to those who comprise the class at the time when the division is made coincides with the evident intention disclosed in the will and codicil. In view of the fact that I have come to the same conclusion as that reached in the Surrogate's Court proceeding, although I am not in accord with all the reasons expressed in the opinion of the learned surrogate, it is not strictly necessary to consider the question of *res adjudicata* resulting from the surrogate's decree. I deem it proper to state, however, that I am of opinion that the surrogate had jurisdiction over the defendant Beck, and had power to construe the provisions of the will in question in an accounting of an estate which must be treated as personalty, and this adjudication is conclusive and binding here  Since the only heirs and next of kin who survived the surviving life tenants are the defendants Louisa March Allen, Flora March Turner, Marguerite St. Ament and George Stanley St. Ament, they alone are entitled to share equally, that is, each to receive one-fourth of the trust estate.

Judgment accordingly.