METROPOLITAN TRUST COMPANY OF THE CITY OF NEW YORK, as Substituted Trustee under the Last Will and Testament of SARAH ANN MARCH, Deceased, Respondent, *v.* HORATIO S. KRANS, as Executor, etc., of LUCY D. SHEAFE, Deceased, and FANNING C. T. BECK, Individually and as Executor of and Trustee under the Last Will and Testament of LOUISA MARCH, Deceased, Appellants, Impleaded with MARGUERITE ST. AMANT and Others, Respondents, and LOUISA MARCH ALLEN and Others, Defendants.

First Department, February 21, 1919.

**Will — trust — construction — remainder — contingent remainder — equitable conversion.**

A testatrix devised all of her real estate to her executors in trust with directions to sell and convey the same as soon after her death as a sale and conveyance could conveniently and advantageously be made and directed that they apply the rents and profits, until a sale, to the use of her daughters during their joint lives in equal proportions and to the use of the survivor of them; and she bequeathed her personal property to her executors in trust to divide the same into two equal parts and to

apply the income of one part to the use of each daughter during life, and directed that her trustee invest and reinvest, from time to time, the personal property and the proceeds of her real estate and pay over the income thereof to her daughters, but provided that no investment could be made or called without the consent in writing of the daughter entitled to the income thereof. She further directed that upon the death of either daughter leaving issue, the trustee should assign and transfer to her issue the corpus of which such daughter had the life use; but in the event of the death of a daughter without issue the trustee was directed to continue the trust and pay over the entire income from both parts to the surviving daughter during her life. She further directed, on the death of the surviving daughter, that the trustee should transfer to her heirs the whole or the equal one-half part of the corpus the income of which had been given to her, and in default of such heirs the trustee was directed to transfer the corpus unto such of the four sons of the testatrix living when the will was made as should survive both daughters, and to the issue of such of them as might then be dead. A codicil provided that the executors should not sell or dispose of the dwelling in which the testatrix resided during the lives of her daughters without their written consent or the consent of the survivor, and further directed that upon the decease of either or both of her daughters that their shares be given to the sons of the testatrix, naming them, share and share alike, if all be then living, but if any of them be dead at the time of the death of either or both of her daughters, then the share to which the son or sons so dying would have been entitled to, if living, was to be given to the survivor or survivors and if all the sons should die before the death of either or both of the daughters, then the share or shares to which the sons would have been entitled was, upon the decease of either or both of the daughters, to be vested in the heirs and next of kin of the testatrix as if she had died intestate. The residence of the testatrix was sold with the consent of the surviving daughter. The testatrix left her surviving two daughters, three sons and three grandchildren, the children of a son who predeceased her, as her only heirs at law and next of kin. The three surviving sons all predeceased their two sisters and left no issue. Both daughters died without issue. In an action thereafter brought by a substituted trustee under the will for a construction of and an accounting thereunder, provisions of the will examined and

*Held*, that it was the intention of the testatrix that the taking and vesting should be in the future and upon the death of the daughters and, therefore, only those of the class then living took the remainder which if real estate was a contingent remainder and fairly comes within the " divide and pay over " rule;

That the four great grandchildren of the testatrix take the entire remainder, consisting of the one-half of the corpus set apart for the use of the survivor of the daughters, and that the estates of the daughters are not entitled

to share therein, upon the theory that the bequest and devise of the remainder did not take effect until the death of the survivor of the daughters and that it was the intention of the testatrix that those only who would then be her heirs at law and next of kin should take.

There was no equitable conversion of the property occupied by the testatrix as a residence until an authorized sale thereof under the will.

SEPARATE APPEALS by the defendants, Horatio S. Krans, as executor, and by Fanning C. T. Beck, individually and as executor and trustee, from a judgment of the Supreme Court in favor of the respondents, entered in the office of the clerk of the county of New York on the 28th day of May, 1918, upon the decision of the court after a trial at the New York Special Term.

The appeal is taken from said judgment in so far as it construes the will of Sarah Ann March, deceased, and provides that upon making the payments therein directed the plaintiff and the Atlantic Trust Company, its predecessor as trustee, shall be freed of and from any liability or accountability as trustee under the last will and testament of said Sarah Ann March, deceased.

*Alfred G. Reeves* of counsel [*Reeves & Todd,* attorneys], for the appellant Fanning C. T. Beck, as executor, etc.

*Paul Armitage* of counsel [*Douglas, Armitage & McCann,* attorneys], for the appellant Horatio S. Krans, as executor, etc.

*H. H. Snedeker* of counsel [*Wells & Snedeker,* attorneys], for the respondents St. Amant.

LAUGHLIN, J.:

This is an action by the substituted trustee under the last will and testament of Sarah Ann March, who died on the 25th day of November, 1860, for the construction of and an accounting under said will. The will was duly admitted to probate by the surrogate of the county of Kings and letters testamentary were duly issued thereunder to Richard Sands Tucker as sole executor. The testatrix left her surviving two daughters, Louisa March and Lucy D. Sheafe, and three sons, and three grandchildren, the children of her son Thomas Henry March, who predeceased her, as her only heirs at law and next of kin. Tucker, the sole executor and

trustee under her will, died on the 1st of March, 1876, and her estate remained unrepresented until the 13th of April, 1891, on which date in an action in the Supreme Court brought by said Lucy D. Sheafe against the two surviving grandchildren of the testatrix and John A. Tucker, who was one of the executors of said Richard Sands Tucker, the sole executor of the testatrix who qualified, the Atlantic Trust Company was duly appointed trustee under the last will and testament of said Sarah Ann March, and that company was thereafter duly merged into the Metropolitan Trust Company, the plaintiff in this action. The three sons of the testatrix who survived her all predeceased their two sisters, and left no issue. The daughter Louisa March died without issue and unmarried on the 11th day of October, 1887; and the daughter Lucy D. Sheafe died without issue on the 25th day of May, 1916. This action was commenced on the fifth day of December thereafter.

The testatrix by her original will, executed on the 16th day of May, 1850, devised all of her real estate *to her executors* in trust, with directions to sell and convey the same as soon after her death as a sale and conveyance could conveniently and advantageously be made, and directed that they apply the rents and profits, until a sale, to the use of her daughters during their joint lives in equal proportions, and to the use of the survivor of them; and she bequeathed her personal property to her executors in trust to divide the same into two equal parts and to apply the income of one part to the use of each daughter during life, and directed that her trustees invest and reinvest from time to time the personal property *and the proceeds of her real estate* and pay over the income thereof to her daughters, but provided that no investment could be made or called without the consent in writing of the daughter entitled to the income thereof. The effect of these provisions was that the personal estate and proceeds of the real estate were to be divided into two equal parts and one held in trust for the use of each daughter during life. By the 4th paragraph of the will she directed that upon the death of either daughter leaving issue, the trustee should *assign and transfer* to her issue the corpus of which such daughter had the life use; but in the event of the death of

a daughter without issue the trustees were directed to continue the trust and pay over the entire income from both parts to the surviving daughter during her life. By the 5th paragraph she directed that the trustee on the death of the surviving daughter should *transfer* to the heirs of her body the whole or the equal one-half part, as the case might be, of the corpus, the income of which had been given to her, and in default of such heirs the trustees were directed to *transfer* the corpus unto such of the four sons of the testatrix living when the will was made as should survive both daughters, and to the issue of such of them as might then be dead, the issue to take the share to which the parent would have been entitled if living. By a first codicil to the will she made no change affecting the construction; but by a second and last codicil, executed on the 9th day of June, 1859, she appointed an additional executor and gave an annuity of $150 for life or until marriage to her granddaughter Elizabeth M. March, and made it a charge upon her entire estate, and by the 3d clause of that codicil she provided that in no event should the executors sell or dispose of the dwelling house in which she then resided known as No. 63 Pierrepont street, or the lot upon which the same was erected, during the lives of her daughters without their written consent or such consent of the survivor. The premises 63 Pierrepont street were not sold until long after the death of one the daughters when they were evidently sold with the written consent of the surviving daughter, and the decision shows that the premises brought $18,000 as to which, however, I find no evidence, but I think it is meant thereby that $18,000 applicable to this trust was realized on the sale. By the 4th paragraph of that codicil, upon which the question of construction largely depends, the testatrix provided as follows: " Upon the decease of either or both of my said two daughters, I give and devise and bequeath her or their share or shares in my estate to my sons Clement Dudley, Francis William and Edward Dudley, to be equally divided between them, share and share alike if all be then living, but if either of my sons be dead at the time of the death of either or both of my said daughters, then I give the share to which the son or sons so dying would have been entitled to if living, to the survivor

or survivors of my said sons; and if all my sons should die before the death of either or both of my said daughters, then the share or shares to which my sons would have been entitled to if living shall upon the decease of either or both of my said daughters, become vested in my heirs at law and next of kin in the same manner as if I had died intestate."

It will thus be seen that by the express provisions of the will the corpus of these trusts was *devised and bequeathed to the executors* upon valid trusts and the only gift or devise or bequest of the remainder under the original will was upon the death of the first daughter dying leaving issue in which case the corpus held for her was to be transferred and assigned by the trustees to such issue and on the death of the survivor of the daughters the corpus which immediately before, being the whole or one-half, as the case might be, depending on whether the other daughter left issue, was to be likewise *transferred* to the heirs of her body, if any, and if not, to the surviving sons or son of the testatrix and the issue of any deceased son; and it is evident that the 4th paragraph of the codicil requires the same construction *as to the time of taking and vesting,* for she provided that upon the death of either or both daughters she gave, devised and bequeathed her or their share — meaning the corpus — to her sons or son then living, and in the event that there was no one to take it under these provisions, she provided that *upon the death* of either or both of the daughters the corpus of the particular trust affected should *become vested* in her heirs at law and next of kin in the same manner as if she had died intestate. She did not here expressly direct that the trustees should assign or transfer it to her sons or heirs and next of kin, but by the codicil she was merely changing devisees and as she did not expressly cancel the provisions of the original will conferring upon the trustee the duty of assigning and transferring the corpus to the persons entitled to take it, I think that no significance on the point as to whether she deemed that she was disposing of realty or personalty, is to be attached to her failure expressly to direct by the codicil that the trustee assign and transfer the corpus to those entitled to take it and to her having provided that the corpus should upon the death of the life tenant become *vested* in

those entitled to take. It is plain that she intended that the taking and vesting should be in the future and *upon* the death of the daughters and, therefore, only those of the class then living took the remainder, which, if real estate was, I think, a contingent remainder and fairly comes within the " divide and pay over " rule (*Fulton Trust Co.* v. *Phillips,* 218 N. Y. 573; *Salter* v. *Drowne,* 205 id. 204; *Fargo* v. *Squiers,* 154 id. 250; *Delaney* v. *McCormack,* 88 id. 174; *Geisse* v. *Bunce,* 23 App. Div. 289; *Matter of Crane,* 164 N. Y. 71), for there was ultimately and before distribution to be a sale and conversion into personalty of the Pierrepont street property and there was to be a division and distribution of the proceeds by the trustee. (See *Matter of Hogarty,* 62 App. Div. 79; *Delaney* v. *McCormack, supra; Hadcox* v. *Cody,* 213 N. Y. 570.)

After the death of Tucker, the sole executor and trustee, and the death of one of the daughters, the executors of and trustees under the last will of Tucker were duly cited in the Surrogate's Court in the county of Kings to render an account of the property of the testatrix which came into the hands of Tucker as executor and trustee, and which had come into their possession, and a decree was made settling the accounts and directing distribution on the 14th day of April, 1890. That decree directed the distribution of one-half of the trust fund, other than the Pierrepont street property, which was required to be held during the life of the daughter Louisa March, who had died, as follows: To the surviving daughter one-half thereof and the other half to the two grandchildren of the testatrix who were then living in equal shares, and the executors of Tucker were directed to deposit with the Franklin Trust Company of Brooklyn the other half of the trust fund to the credit of the estate of the testatrix in trust for the benefit of her surviving daughter. The Atlantic Trust Company came into possession of the funds so deposited and of the premises No. 63 Pierrepont street by virtue of a decree of the Supreme Court made on the 13th day of April, 1891, in the action to which reference has been made, and the judgment in that action directed that in the event of a sale of the Pierrepont street property with the consent of the surviving life tenant, the proceeds thereof should be divided

into two equal parts and that one part thereof should continue to be held by the trustee as constituting part of the trust fund of personal property and proceeds of real estate " upon the trusts and conditions, subject to the powers, and with the limitations over in remainder after the death, which are contained in that behalf in said will and codicils," and that the other part thereof, " constituting part of the trust fund of personal property and proceeds of real estate which, in the second clause of said will was created for the benefit of Louisa March, now deceased, is to be distributed and paid over by the said trustee, one-half thereof to the plaintiff Lucy D. Sheafe, and one-quarter thereof to each of the defendants Elizabeth M. St. Amant and Joshua Sands March." The Pierrepont street premises were subsequently sold by the trustee, with the consent of the surviving daughter, as already stated, and the proceeds of that sale evidently constitute a large part of the estate remaining undistributed, for the total amount of the estate received by the trustee applicable to this trust was $29,911.26 and the amount thereof on hand as shown by the decision is $19,325.64. One of the grand-children of the testatrix who survived her died February 20, 1865. The other two were parties to the action in which the trustee was appointed and were by the judgment therein each given one-eighth of the proceeds of the sale of said premises. Those grandchildren of the testatrix have since died and one of them, Joshua Sands, left issue, the defendants Florence March Turner and Louisa March now Allen, him surviving; and the other, Elizabeth Magrudder St. Amant, also left issue, the defendants George Stanley St. Amant and Marguerite St. Amant, her surviving. The point of law with respect to the construction of the will is whether these four great grandchildren of the testatrix take the entire remainder, being the one-half of the corpus set apart for the use of the survivor of the daughters, or whether the estates of the daughters represented by appellants are entitled to share therein. The trial court held that the said four great grand-children took it all, but reached that conclusion on the theory, as shown by the opinion (*Metropolitan Trust Co. v. Allen,* 103 Misc. Rep. 301), that there was an equitable conversion of all the real estate, including the Pierrepont street premises,

immediately upon the death of the testatrix, and that, therefore, under the rule of law applicable to personal property those entitled to take are to be determined as of the time of distribution and the great grandchildren only took the remainder. (See *Matter of Leonard,* 218 N. Y. 513, 521.) It is contended by the appellants, however, that there was and could have been no equitable conversion with respect to the Pierrepont street property until the sale thereof, and that contention is, I think, sound. Under the original will it may be that there would have been an equitable conversion of all the real estate, but when under the second codicil the testatrix forbade the sale of the Pierrepont street premises without the written consent of the life tenants or the survivor of them it is precisely as if that provision of the codicil had been in the original provisions of the will as *an exception* to the provisions thereof directing a sale of the real estate (See *Ward* v. *Ward,* 105 N. Y. 68); and, therefore, there was no equitable conversion of that realty until the authorized sale thereof under the will. (*Savage* v. *Burnham,* 17 N. Y. 561; *Matter of Thomas,* 1 Hun, 473; *Underwood* v. *Curtis,* 127 N. Y. 523, 533; *Ross* v. *Roberts,* 2 Hun, 90; affd., 63 N. Y. 652; *Matter of Tatum,* 169 id. 514, 518; *Salisbury* v. *Slade,* 160 id. 278; *Matter of Hammond,* 74 App. Div. 547; *Ogsbury* v. *Ogsbury,* 115 N. Y. 290.) I am of opinion, for the reasons already assigned, that the decision made by the trial court is correct on the theory that the true construction of the will is that the bequest and devise of the remainder did not take effect until the death of the survivor of the daughters, and that it was the intention of the testatrix that those only who would then be her heirs at law and next of kin should take. (*United States Trust Co.* v. *Peters,* 180 App. Div. 186; affd., 224 N. Y. 626; *Marsh* v. *Consumers Park Brewing Co.,* 220 id. 205, 212; *McLean* v. *McLean,* 207 id. 365; *Matter of Farmers' Loan & Trust Co.,* 189 id. 202; *Fowler* v. *Ingersoll,* 127 id. 472; *Lyons* v. *Ostrander,* 167 id. 135.) The theory of the appellants is that the remainder in question, in so far as it was represented by the Pierrepont street premises — the amount of which does not appear — became vested in the sons of the testatrix and became divested as they died and on the death of the last surviving son became vested absolutely, one-third in the

grandchildren representing the deceased son of the testatrix and one-third in each of the daughters of the testatrix, who were the life tenants, and that, therefore, the estate of each daughter took one-third; and they appear to contend that the same construction should apply to that part of the remainder which concededly was personal property. I am of opinion that the title to the remainder in question remained in the trustee until the death of the survivor of the daughters, and then passed to the four grandchildren of the testatrix as a class. (*Lewisohn* v. *Henry,* 179 N. Y. 352, 362; *Smith* v. *Edwards,* 88 id. 92, 102; *Shipman* v. *Rollins,* 98 id. 311, 324; *Matter of Leonard, supra; Matter of Vander Roest,* 220 N. Y. 664; *Matter of Crane, supra; Matter of Baer,* 147 N. Y. 348, 353; *Schlereth* v. *Schlereth,* 173 id. 444, 449; *Hadcox* v. *Cody, supra.*)

It follows, therefore, that the judgment should be affirmed, with costs.

CLARKE, P. J., DOWLING, SMITH and MERRELL, JJ., concurred.

Judgment affirmed, with costs.