In the Matter of the Estate of ROBERT FARRIER, Deceased.

Surrogate's Court, Oneida County, December 3, 1930.

*W. H. Weller*, for the executor.

*Edward W. Mathews*, for Minnie Farrier and others.

EVANS, S. This is a proceeding for a judicial settlement and it is necessary to construe the residuary clause of the last will and testament of this testator.

The point involved is whether the residuary estate did or did not vest in the heirs of the testator at the time of his death.

The will was admitted to probate by this court on September 19, 1907. The testator left him surviving a widow and no descendants.

At the time of his death the records on file in this office show that he had thirty-nine heirs.

The provisions of the will are peculiar and there are reasons to support the inference that the testator feared a will contest and sought to protect his widow from that calamity. The will first provides for the payment of debts and funeral expenses and then bequeaths and devises to the wife all real and personal property to which she would be entitled if the testator had died intestate. The rest of the property is subjected to a life use by the wife and immediately after her death it directs the payment of $300 to a niece, the cancellation of a mortgage of $300 on the property of another relative and to three others is devised a small wood lot.

The residuary clause follows and reads: " Lastly, the balance of said rest, residue and remainder to be divided among my lawful

heirs in accordance with the general and statute law of the State of New York therein provided."

It is fundamental that in the construction of wills the intent of the testator is the paramount consideration and that rules of construction become secondary in importance where there is plain evidence of conflict.

In the case at bar it appears to me that the intent and the rule are in harmony. With the exception noted it seems reasonable to believe that the testator after providing for his wife had no fixed and settled policy as to how his residuary estate should be divided in so far as it applied to particular individuals. His heirs were remote and widely scattered.

The situation seems to justify the belief that the testator was not greatly concerned about who had his property after the death of his widow.

His intent, as I view it, was to have the residuary estate distributed among his heirs living at the time of the death of the widow. The language used in this will is substantially the same as in other cases that have been construed with a holding that the property vested in the heirs living at the time of the death of the life tenant.

" Where final division and distribution is to be made among a class the benefits of a will must be confined to those persons who come within the appropriate category at the date when the distribution or division is directed to be made." (*Matter of Baer*, 147 N. Y. 348.)

" It is the general rule of construction that a future and contingent devise or bequest to a class takes effect on the happening of the contingency on which the limitation depends only in favor of those objects who at that time come within the description." (*Matter of Allen*, 151 N. Y. 243; *Teed* v. *Morton*, 60 id. 502.)

In the case at bar there are no words of gift but a direction to divide.

" Where the only gift is found in a direction to divide or pay at a future time, the gift is future and not immediate; contingent and not vested." (*Matter of Crane*, 164 N. Y. 71.)

I, therefore, hold and decide that the residuary estate of this testator did not vest until the death of his widow and should be distributed among the living heirs of the testator at that time.

Decreed accordingly.